**UNITED TRANSPORTATION UNION, Plaintiff,**

v.

**ILLINOIS CENTRAL RAILROAD COMPANY, Defendant.**

No. 88 C 9607.

United States District Court, N.D. Illinois, E.D.

Feb. 26, 1990.

---

1. *Cf.* 17 U.S.C. sec. 105 ("Copyright protection under this title is not available for any work of the United States government ...").

Clinton J. Miller, III, Asst. Gen. Counsel, United Transp. Union, Cleveland, Ohio, and John J. Naughton, Henslee, Monek & Henslee, Chicago, Ill., for plaintiff.

Richard J. Schreiber, Steptoe & Johnson, Chicago, Ill., and Paul J. Ondrasik, Jr. and Karen E. Rochlin, Steptoe & Johnson, Washington, D.C., for defendant.

## ORDER

BUA, District Judge.

Based on an alleged violation of the Railway Labor Act, 45 U.S.C. § 151 *et seq.*, plaintiff United Transportation Union ("UTU") requests declaratory and injunctive relief. Specifically, UTU seeks to compel defendant Illinois Central Railroad Company ("Illinois Central") to engage in national collective bargaining. Illinois Central has filed a counterclaim, arguing that UTU is in violation of the Railway Labor Act by refusing to participate in local negotiations. Both parties now move for summary judgment on their respective claims. For the reasons stated herein, this court denies plaintiff's motion for summary judgment and grants defendant's motion for summary judgment.

1. Illinois Central's national bargaining agent was the National Carriers' Conference Committee of the National Railway Labor Conference, an organization which negotiates national agreements on behalf of railroad carriers.

## I. FACTS

UTU is an unincorporated labor organization that represents railroad employees throughout the United States and Canada. Illinois Central is a major rail carrier which operates in seven states. Its operating employees are represented by UTU.

Since 1983, Illinois Central has significantly decreased the size of its operations; it has reduced its work force by 58%, sold off 19 line segments (the equivalent of approximately 3,500 route miles), and cut its rolling stock of diesel locomotives and freight cars in half. Due to the changing nature of its operations, Illinois Central decided to renegotiate existing labor agreements.

In the railroad industry, collective bargaining takes place on both a national and local level. When negotiations are conducted locally, a single employer bargains with an individual union. In contrast, national collective bargaining (commonly referred to as "national handling") involves multiple employers and unions. Typically, unions and railroads participate in national handling by giving their bargaining authority to a multi-carrier or multi-union bargaining agent. The bargaining agents then negotiate a single national agreement which is binding on all of the parties.

Despite Illinois Central's participation in national handling in the past,[1] it concluded that local negotiations would be more suitable for its current contract proposals. On April 19, 1988, Illinois Central notified UTU of its intention to renegotiate existing labor contracts.[2] At a conference held on May 18, 1988, Illinois Central informed UTU that it would not participate in national handling, and that it intended to negotiate locally. On July 25, 1988, UTU served notice upon Illinois Central of its own contract proposals, and requested a conference within thirty days. A conference was held on August 4, 1988, during which Illinois Central re-emphasized its position against

2. Pursuant to section 6 of the Railway Labor Act, 45 U.S.C. § 156, the party seeking to renegotiate an existing labor agreement must give the other party thirty days written notice of the proposed changes.

national handling. On October 14, 1988, Illinois Central made counterproposals for concurrent handling of UTU's proposed changes. Once again, Illinois Central expressed its desire to negotiate locally.

Claiming that Illinois Central is obligated to engage in national handling, UTU initiated this lawsuit. Illinois Central filed a counterclaim, seeking to compel UTU to participate in local negotiations. Both sides now claim that they are entitled to summary judgment.

## II. DISCUSSION

According to UTU, a party *must* participate in national handling if it would be appropriate to bargain nationally and if there is a history of national bargaining with respect to the disputed issue. *See Brotherhood of R.R. Trainmen v. Atlantic Coast Line R.R.*, 127 U.S.App.D.C. 298, 383 F.2d 225, 229 (1967), *cert. denied*, 389 U.S. 1047, 88 S.Ct. 790, 19 L.Ed.2d 839 (1968). This court disagrees.

Although the Railway Labor Act imposes a duty upon the carrier to negotiate in good faith, *see* 45 U.S.C. § 152 First (1982), nothing in the Act suggests that a carrier is obligated to negotiate a national contract through a multi-carrier bargaining representative. Indeed, the Act recognizes each party's right to choose their own bargaining representative. *See* 45 U.S.C. § 152 Third, Fourth (1982).[3] As the Supreme Court has long recognized, this freedom of choice is the "essential foundation of the statutory scheme." *Texas & New Orleans R.R. v. Brotherhood of Ry. and Steamship Clerks*, 281 U.S. 548, 569, 50 S.Ct. 427, 433, 74 L.Ed. 1034 (1930). Thus, Illinois Central cannot be compelled to designate a multi-

carrier representative as its bargaining agent. *American Ry. and Airway Supervisors Ass'n v. Soo Line R.R.*, 891 F.2d 675, 678 (8th Cir.1989); *United Transp. Union v. Grand Trunk W. R.R.*, 712 F.Supp. 107, 110 (E.D.Mich.1989); *see also United Transp. Union v. Duluth, Missabe & Iron Range Ry. Co.*, No. 5–88–0178, slip op. at 4, —— WL —— (D.Minn.Dec. 21, 1989).

Notwithstanding Illinois Central's statutory right to select its own bargaining representative, UTU claims that Illinois Central is still obligated to engage in national handling. UTU bases its argument on section 2 of the Railway Labor Act, which states that carriers and unions must "exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions." 45 U.S.C. § 152 First (1982). That statutory provision, however, only requires the parties to put forth a good faith attempt to settle disputes. It does not specify the mode of dispute resolution. No court has ever held that a union may unilaterally refuse to negotiate locally and insist that the matter be resolved on a nationwide scale. Several courts, in fact, have reached the opposite conclusion. *See, e.g., Soo Line*, 891 F.2d at 679–80 (the railroad "has no obligation to accept national bargaining and is not bound by national negotiations in which it chooses not to participate"); *Grand Trunk*, 712 F.Supp. at 111 (union is not free to decline local negotiations and demand national handling); *Railway Labor Executives' Ass'n v. Soo Line R.R.*, No. 4–86–379, slip op. at 23 n. 12 (D.Minn. Dec. 24, 1986) ("nothing in the [Railway Labor Act] requires that defendant accede to national handling ...").[4] National multi-party bargaining is

---

**3.** Section 2 Third states as follows:

"Representatives ... shall be designated by the respective parties without interference, influence, or coercion by either party over the designation of representatives by the other; and neither party shall in any way interfere with, influence, or coerce the other in its choice of representatives." 45 U.S.C. § 152 Third (1982). Section 2 Fourth recognizes the employees' right "to organize and bargain collectively through representatives of their own choosing." 45 U.S.C. § 152 Fourth (1982).

**4.** UTU relies on an isolated line of cases emanating from the D.C. Circuit's decision in *Atlantic Coast Line*. *See Delaware and Hudson Ry. Co. v. United Transp. Union*, 146 U.S.App.D.C. 142, 450 F.2d 603, *cert. denied*, 403 U.S. 911, 91 S.Ct. 2209, 29 L.Ed.2d 689 (1971); *United Transp. Union v. Burlington N., Inc.*, 325 F.Supp. 1125 (D.D.C.1971); *International Ass'n of Machinists and Aerospace Workers v. National Ry. Labor Conference*, 310 F.Supp. 905 (D.D.C.1970), *appeal dismissed*, 150 U.S.App.D.C. 36, 463 F.2d 872 (1972); *Chicago, Burlington & Quincy R.R. v. Railway Employes' Dep't, AFL–CIO*, 301

voluntary in nature, requiring the consent of each party. *See Charles D. Bonanno Linen Serv., Inc. v. NLRB,* 454 U.S. 404, 412, 102 S.Ct. 720, 725, 70 L.Ed.2d 656 (1982).[5] In the absence of mutual consent, this court will not force Illinois Central to bargain on a national level—especially since Illinois Central has remained ready and willing to bargain locally.

Even if this court had the authority to require national handling, UTU has not demonstrated that national handling is obligatory in this case. Relying on *Atlantic Coast Line* and its progeny, UTU argues that two factors should be considered: (1) the "practical appropriateness" of national handling, and (2) the "historical experience" of national bargaining on the particular issue. *Atlantic Coast Line,* 383 F.2d at 229. This court, however, is not convinced that national handling would be a practically appropriate method of resolving the current dispute. As the court in *Grand Trunk* pointed out, the Staggers Rail Act of 1980 ("Staggers Act") has diminished the practical utility of national handling in certain circumstances. *Grand Trunk,* 712 F.Supp. at 111–12. Prior to the enactment of the Staggers Act, railroads could increase their freight rates collectively. *Id.* at 111. After the Staggers Act went into effect, railroads were required to set their rates individually in order to foster a more competitive environment. *See*

49 U.S.C. § 10101a (Supp.1989); *Grand Trunk,* 712 F.Supp. at 112; *see also* Affidavit of Robert G. Richter, at 3, ¶ 4. To maintain this competitive environment, carriers need greater freedom to determine their own cost structures, especially labor costs. *Grand Trunk,* 712 F.Supp. at 112 (citing H.R.Rep. No. 96–1035, 96th Cong., 2d Sess. 42–43, 119–21 (1980)), U.S.Code Cong. & Admin.News 1980 pp. 3978, 3987–3988, 4063–4065. If railroads could be compelled to participate in national negotiations, they would lose much of this freedom. The ability to freely engage in local negotiations is perhaps even more important to a railroad such as Illinois Central, which seeks to obtain labor agreements that are more consistent with its current railroad operations. *See* Affidavit of Robert G. Richter, at 2, ¶ 3.[6]

Of the 11 unions that Illinois Central must bargain with, UTU is the only one which refuses to participate in local negotiations. UTU has a duty to negotiate with Illinois Central directly, and that duty cannot be avoided by demanding national handling.

### III. CONCLUSION

For the foregoing reasons, this court denies plaintiff's motion for summary judgment and grants defendant's motion for summary judgment. Plaintiff is hereby ordered to negotiate with defendant's right-

---

F.Supp. 603 (D.D.C.1969). Yet, none of those decisions identify any statutory provision which requires a party to participate in national handling against its will. The court in *International Ass'n of Machinists* conceded this point: "[T]here is no express language in the Railway Labor Act that compels national handling." 310 F.Supp. at 911; *see also Atlantic Coast Line,* 383 F.2d at 229 ("The Railway Labor Act does not universally and categorically compel a party to a dispute to accept national handling over its protest.").

5. Of course, once a party has consented to national handling, and national negotiations have begun, that party's ability to withdraw from the negotiations may be limited. *Soo Line,* 891 F.2d at 678 (citing *Bonanno Linen,* 454 U.S. at 410–11 & n. 5, 102 S.Ct. at 724–25 & n. 5). Before negotiations have commenced, the parties remain free to withdraw from their multi-party bargaining units. *Id.* In the case at bar, Illinois Central has not consented to national handling,

and bargaining has not commenced on any level.

6. Moreover, the other factor set forth in *Atlantic Coast Line*—*i.e.,* whether the particular issues have been historically resolved on a national basis—is not a particularly compelling reason to require national handling in the instant case. As circumstances change over time (*e.g.,* the deregulation of the railroad industry or the restructuring of a particular railroad), the method of dispute resolution used in the past becomes less relevant in deciding how similar labor issues should be handled in the future. Unions and carriers may be discouraged from participating in national handling in the first place if such participation could conceivably obligate them to engage in national handling in the future. *American Ry. and Airway Supervisors Ass'n v. Soo Line R.R.,* 690 F.Supp. 802, 807 n. 8 (D.Minn.1988), *aff'd,* 891 F.2d 675 (8th Cir. 1989); *see also Railway Labor Executives' Ass'n,* No. 4–86–379, slip op. at 22–23.

fully chosen representative on a local basis with respect to all outstanding contract proposals.

IT IS SO ORDERED.